IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

PEPPER HOBBY                                                  PLAINTIFF

vs.                            NO. 4:08CV00020 BSM

UNDERGROUND UTILITIES
CONTRACTORS, INC.                                          DEFENDANT

**ORDER**

Plaintiff filed this action alleging that defendant violated her rights under the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601 *et seq.*, and the Arkansas Civil Rights Act (ACRA), Ark. Code Ann. §§ 16-123-101 *et seq.* Defendant has filed a motion for summary judgment. Plaintiff has responded and defendant has replied. For the reasons set forth below, the motion is granted in part and denied in part.

I. FACTUAL BACKGROUND

In August, 2005, plaintiff began working for defendant as a laborer on a crew based in Cabot, Arkansas. Her job required her to lay pipe, pull and push wire, build transformers, and assist in other tasks necessary for the construction of new subdivisions. (Undisputed fact ¶ 3). Plaintiff was the only female laborer who worked for defendant. (Plaintiff's depo. p 10).

Plaintiff learned that she was pregnant in November, 2006. She presented a note to John Ray (Ray), defendant's human resources officer, from the Cabot Medical Clinic stating that she required "light duty only due to pregnancy, no lifting." (Plaintiff's depo. p. 11; Defendant's Ex. 2). On November 20, 2006, plaintiff spoke by telephone with Robert

McLean (McLean), the general foreman and Ray, about the light duty request. Plaintiff asked about an office job, but was told that the office job did not qualify as light duty as she had to be treated the same as the male employees. (Plaintiff's depo. p. 14).

McLean confirmed his November 20th telephone conversation in a November 21, 2006 letter. McLean wrote that the "no lifting restriction" meant that plaintiff was unable to perform the full range of the job requirements for a laborer, that defendant had no position for light duty into which plaintiff could be transferred, and that she had to be placed on unpaid leave status. McLean said that defendant was required to treat plaintiff's medical condition in the same manner it would treat other employees who could not do their jobs for a short period of time. McLean wrote that defendant anticipated plaintiff's need for leave to exceed the twelve weeks provided by the FMLA, and that it would seriously consider plaintiff's application for return to full duty. (Defendant's Ex. 3).

On December 7, 2006, plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC), alleging that defendant discriminated against her based on her pregnancy by not providing her with a light duty job. (Defendant's Ex. 4).

On December 13, 2006, plaintiff underwent a D&C after suffering a miscarriage. She provided Ray a letter from her physician releasing her to return to work on January 8, 2007. (Plaintiff's depo. p. 21; Defendant's Ex. 5). Defendant assigned plaintiff to the Benton, Arkansas crew. The job in Benton required the same job duties and the same pay as the one in Cabot. (Undisputed fact ¶ 12).

Plaintiff's previous commute from her home in Ward, Arkansas to Cabot was about 15 miles each way. (Plaintiff's depo. p. 7). The commute from her home to Benton was about 60 to 65 miles each way and took close to an hour. She claims that the commute to Benton was too expensive and too stressful to continue doing and within one month of returning to work with defendant, plaintiff accepted a position with the Arkansas Highway Department. (Plaintiff's depo. pp. 33-34).

The EEOC issued its determination on September 21, 2007, finding reasonable cause to believe that a violation had occurred. (Plaintiff's Addendum at 42-44). On November 13, 2007, defendant made plaintiff an unconditional offer of reinstatement, offering her the same job position with a Cabot crew, at the same rate of pay and benefits as other crew members. (Defendant's Ex. 7). Plaintiff did not accept the offer.

On January 8, 2008, plaintiff filed this action. She alleges violation of the FMLA, sex discrimination under the ACRA and retaliation under the ACRA.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." *Nelson v. Corr. Med. Servs.*, 533 F.3d 958, 961 (8th Cir. 2008) (citing Fed. R. Civ. P. 56; *Brown v. Fortner*, 518 F.3d 552, 558 (8th Cir. 2008)).

The moving party must demonstrate "an absence of evidence to support the non-

moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). "The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (internal citation and quotation marks omitted).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1985)). Plaintiff as the non-movant "must demonstrate a genuine issue of material fact, that is a dispute that might affect the outcome of the suit under the governing law, so that a reasonable jury could return a verdict for the nonmoving party." *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1029 (8th Cir. 2006) (internal citation and quotation marks omitted).

In considering a motion for summary judgment, the court views the evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). It does not weigh the evidence or make

credibility determinations. *Jenkins v. Winter,* 540 F.3d 742, 750 (8th Cir. 2008). However, the plain language of Rule 56 mandates the entry of summary judgment against a non-moving party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

### III. DISCUSSION

Claims brought under the ACRA are to be analyzed in the same manner as Title VII claims. *Merritt v. Albemarle Corp.*, 496 F.3d 880, 883 (8th Cir. 2007); *Henderson v. Simmons Foods, Inc.,* 217 F.3d 612, 615 n. 3 (8th Cir. 2000). *See* Ark. Code. Ann. § 16-123-105 (authorizing state courts to look for guidance to federal decisions interpreting federal Civil Rights Act in construing ACRA).

A.      Sex Discrimination Claim

The ACRA prohibits employment discrimination because of gender. "Because of gender" includes "on account of pregnancy." Ark. Code Ann. § 16-123-102(1); *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 570 (2000). At the summary judgment stage, the issue in a discrimination case is "whether the plaintiff has sufficient evidence that unlawful discrimination was a motivating factor in the defendant's adverse employment action." *Roberts v. Park Nicollet Health Servs.*, 528 F.3d 1123, 1127 (8th Cir. 2008) (internal citation and quotation marks omitted). A plaintiff raising a claim of discrimination may survive a motion for summary judgment either by proof of direct evidence of discrimination or by

creating an inference of discrimination under the burden-shifting test, established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-03 (1973), and then rebutting any proffered nondiscriminatory reason for the employment decision with sufficient evidence of pretext.  *King v. Hardesty*, 517 F.3d 1049, 1057 (8th Cir. 2008).

As plaintiff has not presented any direct evidence of sex discrimination, the court applies the *McDonnell Douglas* framework. "Under the *McDonnell Douglas* framework, a presumption of discrimination is created when the plaintiff meets [her] burden of establishing a prima facie case of discrimination." *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, 1006 (8th Cir. 2005).  Once plaintiff establishes her prima facie case, the burden of production shifts to defendant to show that it had a legitimate, nondiscriminatory reason for its actions.  If defendant can articulate a legitimate, nondiscriminatory reason, the burden returns to plaintiff to prove that the proffered reason is pretextual.  *Beaden v. Int'l Paper Co.*, 529 F.3d 828, 831-32 (8th  Cir. 2008).

To establish a prima facie case of pregnancy discrimination, plaintiff must show that (1) she is a member of a protected class; (2) that she was qualified to receive the benefit of light duty; (3) that she was denied light duty; and (4) that light duty was available to others with similar qualifications.  *See Lang v. Star Herald*, 107 F. 3d 1308, 1311 (8th Cir. 1997).  *See also Deneen v. Nw. Airlines, Inc.*, 132 F.3d 431, 435 (8th Cir. 1998) ("To prevail on her pregnancy discrimination claim, plaintiff must show that she was treated differently because of her pregnancy or a pregnancy-related condition.")

Defendant argues that plaintiff cannot establish a prima facie case because she cannot establish that other similarly situated males were offered light duty. Defendant contends that its policy of providing light duty for only on-the-job injuries is non-discriminatory.

Plaintiff counters that pregnancy should not be likened to a non-work related injury or illness, and that to do so is discriminatory. Plaintiff's argument, however, has been rejected by the courts who have considered it. In particular, a number of courts have addressed the specific issue in this case: whether the policy of offering light duty for only work-related injuries discriminates against pregnant employees.

In *Reeves v. Swift Transp. Co., Inc.*, 446 F.3d 637(6th Cir. 2006), the Sixth Circuit found that the employer's light-duty policy, which provided light-duty work to employees injured on the job was "pregnancy-blind." *Id*. at 641. While recognizing that pregnancy-blind policies could be tools for discrimination, the court found that the plaintiff had failed to produce any evidence indicating that the defendant's policy was a pretext for discrimination. *Id*. The court accepted the reasoning of the Fifth and Eleventh Circuits that as long as pregnant employees were treated the same as employees with non-work related injuries, the employer did not discriminate. *Id*. at 642-43.

In *Urbano v. Cont'l Airlines, Inc.*, 138 F.3d 204, 208 (5th Cir. 1998) the court found that giving light duty to a pregnant employee while not to an employee with an off-the-job injury would have the effect of granting the pregnant employee preferential treatment. Similarly, in *Spivey v. Beverly Enters.*, 196 F.3d 1309, 1312-13 (11th Cir. 1990), the

Eleventh Circuit found that an employer was under no obligation to extend a modified duty assignment to a pregnant employee where the accommodation was only offered to employees injured on the job. "The PDA does not require that employers give preferential treatment to pregnant employees." *Id*. at 1312 (citing *Lang,* 107 F.3d at 1312).

Although the Eighth Circuit has not specifically addressed whether a policy of offering light duty only for on-the-job injuries discriminates against pregnant employees, its rulings indicate that it would join the Fifth, Sixth and Eleventh Circuits. It has consistently stated that the PDA "does not create substantive rights to preferential treatment." *Lang*, 107 F.3d at 1312. "On the contrary, the PDA allows employers to treat pregnant women as badly as they treat similarly affected but nonpregnant employees." *Deneen*, 132 F.3d at 437 (internal citation and quotation marks omitted).

Plaintiff has pointed to only one employee whom she believes was given light duty for a non-work related injury. Defendant, however, has stated that the employee plaintiff identified as "Tiny Tim" was not provided light duty. (Affidavit of John Ray, p. 2). Plaintiff has failed to establish that defendant treated her differently than similarly situated non-pregnant employees. For this reason, Defendant is entitled to summary judgment on plaintiff's sex discrimination claim.

B.      <u>Retaliation</u>

Title VII prohibits retaliation against an employee who participated in a proceeding or investigation that claims her employer violated Title VII. To establish a prima case of

retaliation, plaintiff must show that (1) she engaged in protected activity, (2) "reasonable employees would have found the challenged retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct." *Recio v. Creighton Univ.*, 521 F.3d 934, 939 (8th Cir. 2008) (quoting *Brenneman v. Famous Dave's of Am., Inc.*, 507 F.3d 1139, 1146 (8th Cir. 2007)). Once plaintiff has established a prima facie case, the burden of production shifts to defendant to advance a legitimate reason for the employment action. "If the employer does so, the presumption drops out and the trier of fact proceeds to decide the ultimate question," whether "the adverse employment action was motivated by intentional retaliation." *Id.* (internal citations and quotation marks omitted).

Defendant argues that plaintiff cannot establish a prima facie case because she cannot prove that she was adversely affected by the decision to transfer her to the Benton crew. There is no dispute that plaintiff's job duties and pay were the same at the Cabot location and the Benton location.

The materially adverse element is objective and requires a determination as to whether the employment action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry Co. v. White*, 548 U.S. 53, 68 (2006) (internal citations and quotation marks omitted). The court recognizes that some courts have found that an increase in commuting time and distance does not amount to an adverse action. *See Sibilia v. Snow*, No. 05-10096-PBS, 2006 WL 2990479, *7 (D. Mass. Oct. 20, 2006) (citing cases). However, these cases are not dispositive. As the

Supreme Court noted in *Burlington,*

> Almost every job category involves some responsibilities and duties that are less desirable than others. Common sense suggests that one good way to discourage an employee such as [the plaintiff] from bringing discrimination charges would be to insist that she spend more time performing the more arduous duties and less time performing those that are easier or more agreeable. That is presumably why the EEOC has consistently found "[r]etaliatory work assignments" to be a classic and "widely recognized" example of "forbidden retaliation."

*Id*. at 71-72 (quoting 2 EEOC 1991 Manual § 614.7, pp. 614-31 to 614-32).

In this case, two factors weigh in favor of finding that a question of fact exists as to whether the transfer was an adverse action. First, the high cost of gasoline has increased commuting costs significantly over the past few years. Plaintiff had to commute about an extra ninety miles a day, or 450 miles a week. The extra costs associated with this commute are not de minimis. Second, plaintiff had to spend close to an additional 1/2 to 2 hours a day commuting. The court cannot find that these factors are merely "trivial harms." *See Weger v. City of Ladue*, 500 F.3d 710, 726 (8th Cir. 2007). Taken together, a reasonable jury could find that transfer was materially adverse.

Plaintiff has also presented evidence from which a jury could find that retaliation was a motivating factor in the adverse action. According to the affidavits of two co-workers, McLean advised plaintiff's foreman in Benton to watch plaintiff's attendance and performance closely, and to write her up if she had any infractions, even being a minute late. Plaintiff's co-workers believed that management was trying to find a reason to justify terminating plaintiff because she had filed a charge. (Affidavit of Josh Lakey, Plaintiff's

Addendum 35-36; Affidavit of James Ammons, Plaintiff's Addendum 37-38). Because plaintiff had farther to commute, she could have been a little late arriving at work, thereby providing defendant with a pretext for terminating plaintiff. Furthermore, a jury could find that plaintiff was transferred to the Benton crew, a less desirable position, in an effort to coerce her to resign.

Finally, a reasonable jury could find that defendant's asserted reason, that there were no openings on the Cabot crew, was pretextual. In addition to the direct evidence of retaliatory intent, plaintiff contends that a supervisor was temporarily assigned to her position in Cabot and he could have been transferred elsewhere.

In sum, the court finds that summary judgment is not appropriate on plaintiff's retaliation claim.

C.   FMLA Claim

An employee has the right following FMLA leave "to be restored by the employer to the position of employee held by the employee when the leave commenced" or to "an equivalent position." 29 U.S.C. § 2614(a)(1). The regulations promulgated by the Secretary of Labor define an equivalent position as "virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, prerequisites, and status." 29 C.F.R. § 825.215(a). "The employee must be reinstated to the same or geographically proximate worksite (i.e., one that does not involve a significant increase in commuting time or distance) from where the employee had previously been employed." 29

C. F. R. § 825.215(e)(1).  Plaintiff asserts that defendant retaliated against her by not restoring her to the same or equivalent position.

The court applies the same analysis applied to plaintiff's retaliation claim discussed above to plaintiff's FMLA claim.  *See Smith v. Allen Health Sys.,Inc.,* 302 F. 3d 827, 832 (8th Cir. 2002) (to establish prima facie case of discrimination, plaintiff must show she exercised rights afforded by Act, she suffered an adverse employment action, and a causal connection between exercise of rights and adverse employment action).  As the court has already found, plaintiff has established a prima facie case of retaliation, and has presented evidence by which a reasonable jury could conclude that defendant's reason for transferring plaintiff to Benton was motivated by retaliatory intent.  Therefore, the court finds that defendant is not entitled to summary judgment on plaintiff's FMLA claim.

## IV.  CONCLUSION

Accordingly, defendant's motion for summary judgment (doc. no. 9) is granted in part and denied in part.  Plaintiff's sex discrimination claim is dismissed.  In all other respects the motion is denied.

IT IS SO ORDERED this 3rd day of October, 2008.

*/s/ Brian S. Miller*
UNITED STATES DISTRICT JUDGE